STATE OF NEBRASKA, EX REL. WILLIAM R. MELLOR, RELATOR, v. D. C. GROW ET AL., RESPONDENTS.

FILED NOVEMBER 11, 1905. No. 14,392.

1. **Taxation:** CORRECTION OF ASSESSMENTS. Chapter 112, laws 1905, amendatory of section 121, article 1, chapter 77, Compiled Statutes 1903, authorizes a county board to correct "evident errors of assessment, or of apparent gross injustice, in over valuation or under valuation of real property," at any of its annual meetings, whether such errors or injustice be due to some act of the assessor or to that of the board itself.

2. **Petition:** PARTIES. The several owners of different tracts or lots of land may unite in a petition to the board for relief from such errors and injustice.

3. **Decision of County Board:** CONCLUSIVENESS. Where the county board has jurisdiction of the subject matter and the parties, and grants such relief, its orders in that behalf are not subject to review in a collateral proceeding, but are conclusive until set aside on error or appeal.

ORIGINAL application for a writ of mandamus to compel respondents to vacate certain orders reducing assessments for taxation. *Writ denied.*

*Norris Brown, Attorney General, W. T. Thompson* and *R. J. Nightingale,* for relator.

*J. S. Pedler* and *H. M. Mathew, contra.*

ALBERT, C.

This is an original application to this court for a writ of mandamus requiring the respondents, who constitute the board of equalization of Sherman county, to vacate certain orders, made by that body in 1905, at its annual meeting,

reducing the assessed valuation of certain real estate in that county, and the restoration of the original valuation thereof on the tax list.  The lands were duly assessed, and the assessment duly acted upon by the board of equaliza tion, in 1904.  At the sitting of the board of equalization in 1905 four petitions, each describing several tracts of land and signed by the owners of the respective tracts, were presented to such board.  The petitions allege, in sub stance, that there are evident errors of assessment, and gross injustice in overvaluation of the real estate described in the petitions "as valued and equalized by the board for the purpose of taxation" in 1904, and the relief sought in each case was a reduction of such valuation.  Evidence was taken, and the board granted the relief prayed.  The rela tor thereupon made due demand on the board for a vaca tion of the several orders granting relief to the petitioners, and for the restoration of the original valuation of their lands to the tax list.  The latter demand was also made on the county clerk, who is ex officio a member of the board of equalization.  The respondents severally refused to comply with the demands, whereupon the relator filed this application.

The case involves an examination of some of the pro visions of what is commonly known as the revenue act of 1903, and which, as originally passed, constitutes chapter 77, Compiled Statutes 1903 (Ann. St. 10400-10643).  Sec tion 105, article I (Ann. St. 10504), of that chapter pro vides that "all real property in this state, subject to taxation, shall be assessed on the first day of April, 1904, and every fourth year thereafter, which assessment shall be used as basis of valuation for taxation until the next quadrennial assessment except as hereinafter provided." The exception, so far as this case is concerned, at least, refers exclusively to such changes as may be lawfully made by the board of equalization.  Section 121 of the above chap ter (Ann. St. 10520), relates to the sessions, powers and duties of the county board of equalization, and provides, among other things, that the board shall, "at its meeting

in the year 1904, and every fourth year thereafter, equalize the valuation of real property of the county by raising the valuation of such tracts and lots as are assessed too low, and by lowering the valuation of such tracts and lots as are assessed too high."

It will be observed that, under the provisions of the sections just referred to, the valuation of real estate, as returned by the assessor and acted upon and adopted by the board of equalization in 1904, aside from the right of appeal to the district court given by section 124 of the act (Ann. St. 10523) and the inherent power of the legislature to amend or repeal the law, was irrevocably fixed and settled until the next quadrennial assessment. But in 1905 an act to amend section 121, *supra,* was passed with an emergency clause, whereby the power of the county board to raise or lower the valuation of real property was enlarged, by inserting immediately after the sentence ending with the word "high," in the above quotation, the following: "But in cases of evident error of assessment or of apparent gross injustice in overvaluation or undervaluation of real property the county board of equalization may at any of its annual meetings consider and correct the same by raising, after due notice has been given to the interested party or parties, or by lowering the assessed valuation of such real property." Laws 1905, ch. 112, sec. 1. In short, as the law stood when the petitions in question were presented and acted upon, the county board had authority to correct "evident error of assessment or of apparent gross injustice in overvaluation or undervaluation of real property."

There is no dispute as to the law thus far, but the relator contends that the words "assessments" and "valuation," as used in the amendment of 1905, relate exclusively to the acts of the assessor, and; as the corrections in questions were of alleged "evident error of assessment and of apparent gross injustice in overvaluation of the land" as "valued and equalized" by the board itself in 1904, they were not within the amendment, and the board was without jurisdic-

tion to correct them at its annual meeting in 1905. This contention involves a narrower construction of the language of the amendment than we are disposed to give it. While the words "assessment" and "valuation" may be properly used to designate certain acts of the assessor, they are as properly, and more frequently, used to designate the official estimate of the value of property subject to taxation. While the assessor makes such official estimate, it is not conclusive, but is subject to revision by the county board of equalization, which body frequently substitutes its own estimate of the value of a particular portion of the property for that of the assessor. See sec. 121, *supra.* Consequently, the completed assessment or valuation of property, which forms the basis of taxation, includes, not only the estimates of the assessor, but also those of the board of equalization. There is nothing in the amendatory act which leads us to believe that the legislature used the two words in the restricted sense which the relator would give them. The act is remedial, and was intended to reach cases where, because of "evident error of assessment or of apparent gross injustice of overvaluation, or undervaluation," a taxpayer would bear more or less than his just share of the burden of taxation. The necessity for a remedy is just as urgent where the error or injustice is in the act of the board, as where it is in the act of the assessor, and it is not probable that the legislature lost sight of this necessity, nor that it intended to provide a remedy in the one class of cases and not in those of the other.

But the relator argues that any one aggrieved by any action of the board had already a remedy by appeal or error, consequently the amendment was not necessary to afford relief in that class of cases. But it is equally true that, without the amendment, one aggrieved by any act of the assessor could have such act reviewed by the board of equalization, and, failing there, could appeal to the district court. But these remedies were hardly adequate. Under the revenue act of 1903, real estate was to be as-

sessed in 1904, and every fourth year thereafter, and the acts of the assessor could be reviewed by the board and the assessments equalized by that body only at its quadrennial meetings. The assessment finally adopted by the board at such meetings as a basis for taxation would remain such basis for the next four years, unless corrected on appeal to the district court, which under the law had to be prosecuted within 20 days. Error was available for a longer period, but, as is well known, it is an unsatisfactory remedy in such cases. Through inadvertence or unavoidable accident the time for pursuing these remedies was frequently allowed to expire before the necessary steps were taken to make them available. Besides, cases might arise in which they would not be available under any circumstances, as where the buildings and improvements constituting the chief value of a particular piece of land were destroyed, or a comparatively worthless piece of land improved by the erection of costly buildings after the quadrennial meeting of the board. In each case the valuation adopted by the board as a basis for taxation, if just when adopted, would be grossly unjust after such changed condition of the property. As the law stood before the amendment, there was no remedy for cases of that kind, or for any other error or injustice in assessment or valuation, not jurisdictional, and they were required to stand until the next quadrennial assessment. It seems to us that the amendment was intended to mitigate such hardships, not by giving a remedy for every case of error or injustice, however slight, but for the class therein specified, whether the same are committed by the assessor or by the board itself.

By stipulation, and otherwise, an attempt is made to bring before this court the evidence taken before the county board at the hearing of the several petitions hereinbefore mentioned. But that evidence cannot be reviewed in this proceeding. The board had jurisdiction of the subject matter and the parties, and its orders in the premises are conclusive, and will be presumed to have been based on sufficient evidence, until reversed on appeal or error. 1 Desty, Taxation, p. 603.

Complaint is made that several property owners joined in one petition in each case. That is not a just ground of complaint. In cases of this kind, parties frequently, if not generally, act without an attorney, and technical exactness and nicety of pleading is neither expected nor required. The petitions are sufficient to confer jurisdiction, and that is sufficient where, as in this case, they are assailed collaterally.

It is recommended that the writ be denied.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the writ of mandamus is denied.

WRIT DENIED.